# NEW YORK SUPERIOR COURT.

THOMAS H. LANDON agt. THE MAYOR, &c., OF NEW. YORK.

*Board of apportionment N. Y. no power to reduce salary of a deputy clerk of the court of common pleas. .*

A deputy clerk of the court of common pleas is not an officer either of the city or county governments; therefore the board of apportionment has no power to reduce his salary.

The judges of this court are among the class of judicial officers who are denominated by the Revised Statutes *public officers of the state.* Consequently, they are not necessarily city or county officers, but officers of the state, and a part of the state judiciary.

By the act of 1871, the board of apportionment (which was then organized) has power, &c., to regulate all salaries of officers and employes of the *city and county governments.*

But if the court itself, or its judges, do not come within the provisions of this act, being state officers, it follows that the clerk nor his deputy, who are appointed by the court and the clerk, can be affected by its provisions.

*Special Term, January,* 1875

DEMURRER to answer.

The complaint alleges that the plaintiff was duly appointed a deputy clerk of the court of common pleas in and for the city and county of New York, and his salary fixed at the sum of $5,000 per·annum.

That he entered upon and has continued to perform the duties of said office to the present time, and was paid his aforesaid salary to June 1, 1871, and also from and since January 1, 1872. That for the interval from June 1, 1871, to January 1, 1872, payment at the rate of $5,000 per annum has been refused, and payment at the reduced rate of

Landon agt. Mayor, &c., of New York.

$4,000 per annum has been made and received by the plaintiff under protest.

And it is alleged that the reduction was illegal, and that the plaintiff is entitled to recover for said interval at the aforesaid rate of $5,000.

The answer alleges that, on the 17th of May, 1871 the board of apportionment, pursuant to chapter 583, of the Laws of 1871, did adopt a resolution as follows:

"*Resolved,* That the salaries of all such officers and employes of the city and county government, as are paid at the rate of $5,000, or a greater sum, per annum, be reduced at the rate of twenty per cent per annum, such reduction to apply from the 1st day of June to the 31st day of December, 1871."

That, pursuant to such resolution, the salary of the plaintiff was thereby reduced to the sum of $4,000 per annum for the period aforesaid.

The demurrer was to the sufficiency of the answer.

*Elliot Sandford,* for plaintiff.

*E. Delafield Smith & D. J. Dean,* for defendants.

MONELL, *C. J.*— The sufficiency of the appointment of the plaintiff as a deputy of the clerk of the court of common pleas, and that his salary was fixed at $5,000 per annum, is conceded by the answer. It is also admitted that he has at all times performed the duties of the office.

The only question, therefore, is, whether the board of apportionment had authority, under the statute referred to, to reduce the plaintiff's salary.

The act is entitled "An act to make provision for the local government of the city and county of New York" (*Laws* 1871, *p.*, 1268); and in the third section it is provided that certain officials shall meet as a board of apportionment, and shall have power, &c., * * * "*to regulate all salaries of officers and employes of the city and county governments.*"

It is claimed that the plaintiff is not an officer of either
the city or county government, and, therefore, not affected
by the resolution of the board reducing salaries by twenty per
cent of such as were then receiving $5,000 or upward.

The city of New York, as a corporate or political body,
consists of the mayor, aldermen and commonalty; and the
county of New York, as a body politic, is represented in its
board of supervisors. These governments, the former under
ancient and modern charters, and the latter as one of the
political divisions of the state, have recently been consoli-
dated (*Laws* 1874, *ch.*, 404), and, for all governmental pur-
poses, have now become one body corporate and politic, by
the name of The Mayor, &c.

When the act of 1871 was passed, these governments were
separated, and each exercised its separate corporate functions
and powers.

The general functions of government in this republic are
confided to the legislative, executive and judicial departments.
The legislative department for the whole state reposes in the
senate and assembly; for districts and portions of the state,
in boards of supervisors; and in cities and villages, in local
boards of councilmen and trustees. In the political divisions
of the state, the functions of these boards are confined to the
interests and terrritory for which they are created. The
people of another or adjacent territory have no interest in
their acts, and cannot be affected or prejudiced by them. The
supervisors of a county, and the aldermen or trustees of a
city or village, must legislate for their own counties, cities or
villages; they cannot legislate for other counties, cities or
villages. They are merely local legislatures, confined and
prescribed in their powers, in whose acts the immediate con-
stituency are interested.

So with the executive department. For the state at large
it is vested in the governor; but in the political divisions of
the state, it is to some extent delegated to certain ministerial
or *quasi* executive officers, who, within prescribed limits or

Landon agt. Mayor, &c., of New York.

divisions, exercise some of the executive power. Their functions are restricted and their powers confined to parts only of the state. The people at large have no interest in, nor are they affected by, the acts of such officers.

Officers appointed or elected to administer the local division of the state, whose functions are limited to such divisions, are local officers, as distinguished from the class whose powers, for some or all purposes, extend throughout the state; and they, as agents of the people, are the local government. In counties, they are the government of the county; in cities, the government of the city; and, for the purpose of local government, their acts, subject only to the higher legislative or executive control, are of force in such divisions, but not elsewhere.

Local governments have always been confided to local officers; and although public officers, whose powers extend over the state, may exercise their powers anywhere in the state, they are not a part of the local government, but only a part of the general government of the state, which includes the separate divisions of the state.

The senate and assembly may legislate for the city or the county of New York, may constitute the agencies for their local government, and prescribe and fix the limit of their powers.

But the senate and assembly is not the local government of the city or county. It is merely a power to create such local government, and not such government itself.

There is a clearly defined distinction between general and local government. The local may be, and doubtless is, included in the general, to the extent that the latter may create the agencies to administer the former. But to that extent only does or can the general government, which resides in the whole people, administer the local government.

Under the agencies thus created, and under them alone, does the local government administer the governments.

If, therefore, local governments are administered by local

officers, created for the purposes, and with power to administer them, then it necessarily follows, that public officers, whose functions extend beyond local territories, are not a part of local governments.

The judicial department is a part of the general government of the state. It forms no exclusive part of any of the political divisions of the state. It administers its functions for the people at large, and, except in some cases, is unlimited in its jurisdiction.

The court of common pleas is a part of this judicial system; and although there is a territorial limitation to its jurisdiction, and a certain degree of *locality* in its organization, it nevertheless is not delivered from the general judicial department of the state. It administers the law for all the people, and is not confined to the constituency of a particular district. For I do not understand that the territorial restriction in the execution of process of a certain kind, and in certain cases, has yet been held to confine its jurisdiction, where it had acquired it in other cases, extending beyond the territorial limit. The constitution recognizes it as part of the entire judicial system, and as part of the general government; and as it is not restricted exclusively to a local or political division of the state, it forms no other part of the local government of the city or county than does the supreme court, when, as another part of the judicial system, it exercises its powers and jurisdiction within the same territory.

The judges of this court are among the class of judicial officers who are denominated public *officers of the state* (1 *R. S.*, 95, *sec.* 1). If such officers, and with functions which, at least for some purposes, extend over the state, then they are not necessarily county or city officers, but officers of the state, and a part of the state judiciary.

In the case of *Day* agt. *Buffington* (11 *Int. Rev. Rec.*, 205), which was an action to recover a tax imposed by congress upon a judge's salary, the plaintiff was a judge of probate for a county in Massachusetts, the court recognizing the vesting

the powers of government in the three departments — the legislative, executive and judicial — held the judge of probate was a state and not a county officer. And the supreme court of the United States in reviewing that decision (11 *Wallace*, 113), say that the judges are one of the means and instrument-alities for administering the government *of a state*. Judge NELSON says (*p*. 126) the question is whether the power to lay and collect taxes enables the general government to tax the salary of a judicial officer of the state, which officer is a means or instrumentality employed to carry into execution one of its most important functions, the administration of the laws.

In *Freedman* agt. *Sigel* (10 *Blatchf.*, 327), it was attempted to distinguish *Day* agt. *Buffington* (*supra*) on the ground that the salary in the former was payable out of the city, and in the latter out of the state treasury. But judge SHIP-MAN says : "In both cases the judge exercises the judicial authority *of the state*, and represents its sovereignty in that behalf. The payment of salaries out of local treasuries did not localize the courts. To assent to such a proposition would be to maintain that a sovereign power of a state depends upon the manner in which it exercises its discretion in the details of its administration and the distribution of its public burthens."

The plaintiff in *Freedman* agt. *Sigel*, was a judge of the superior court of this city, a court no less local than the common pleas. Of that court judge SHIPMAN says : "It is clothed with no inconsiderable part of the *general judicial power of the state*, with none, or only partial limitations as to the subject-matter of litigation."

In *Quin* agt. *The Mayor*, &c. (44 *How. Pr.*, 266), the action was to recover the plaintiff's salary as a judge of one of the district courts of this city. In examining the act of 1871, as authorizing the board of apportionment to regulate salaries of officers of the local governments, judge FANCHER says : "It may be questioned whether the officers

thus referred to include judicial officers. *The term certainly does not include state officers* who derive their office from the general laws of the state, and whose duties are not by law limited to the city and county of New York." This case was affirmed by the court of appeals upon the opinion of judge FANCHER (53 *N. Y.*, 627).

It is quite clear, I think, that the officers whose salaries were brought within the regulating power of the board of apportionment, were intended to be such as formed a part of the *political* government of the city and county, and who were connected with the executive or legislative departments, and not such as were a part of the judicial system of the state; otherwise, the legislature would not have limited it to officers of the government, but would have extended it to all officers whose salaries were paid out of the city or county treasury. But the limitation to the officers of those *governments* indicates sufficiently that it was not intended to cover officers of the state.

The deputy of the clerk of the court of common pleas is appointed by the clerk, who receives his appointment from the *court* (*Laws* 1847, *chap.* 255, *sec.* 7), and is the cutodian of its records and seal. He is a part of the incorporeal political being, which requires for its existence the presence of judges and a clerk.

Therefore, if the court itself, or the judges of the court, are not within the act, it follows that neither the clerk nor his deputy is, or can be affected by its provisions.

A careful examination of the subject has satisfied me that the plaintiff is not, and was not, an officer of either the city or county governments; and, therefore, that the board of apportionment had no authority to reduce his salary.

The plaintiff must have judgment upon the demurrer, with costs.

On appeal to the general term, the judgment below was affirmed June 7, 1875, upon the opinion of the chief justice, and his opinion was made that of the general term.