## JOHN R. FELLOWS, RESPONDENT, *v.* THE MAYOR, ETC., OF THE CITY OF NEW YORK, APPELLANTS.

*Assistant district attorney of New York — State officer — salary of.*

The assistant district attorney of the county of New York is an officer of the State government, and not of that county, and the board of apportionment created by chapter 583 of 1871, "to regulate all salaries of officers and employes of the city and county governments" had no power to reduce his salary.

Where a provision establishing the salary of the assistant district attorney of the county of New York was contained in an act entitled "An act to make further provision for the government of the county of New York," *held,* that the provision was local as it affected the salary of the officers in a particular county only, yet that the title of the act sufficiently expressed the subject.

APPEAL from a judgment in favor of the plaintiff, entered on the verdict of a jury, in an action brought by the plaintiff to recover a

balance alleged to be due him for his salary as assistant district attorney for the county of New York.

*Francis Lynde Stetson*, for the appellants.

*Charles E. Miller*, for the respondent.

Brady, J.:

The question presented in this case is, whether the plaintiff was or was not a State officer while holding the position as assistant district attorney. It is conceded that the district attorney is a State officer. It could not well be questioned. (Rev. Stat., vol. 1, p. 96 [Edm., vol. 1, p. 98, § 15].) The plaintiff was appointed by that officer under the provisions of the Revised Statutes authorizing the appointment of all assistants, etc., by the body, board or officer by which or to whom they shall be respectively subordinate, in all cases in which the appointment is not specially provided for. (1 Rev. Stat., 116, § 5.) The salary of the district attorney is fixed by the supervisors and paid by the county. (§ 3, chap. 441, Laws 1851.) In 1868 (chap. 854, Laws 1868, p. 2025) the legislature recognized the assistant district attorneys in the act making provision for the government of the county of New York, and limited the number from the 1st January, 1868, to three.

Their duties in this county are not, it would seem, specifically set forth by statute, but they are sufficiently known and defined here to warrant this court in taking judicial notice of them. The statutes in reference to these officers do not always state the duties. (See Laws 1857, chap. 409; Laws 1866, chaps. 8, 734; Laws 1872, chap. 587.) The latter act provides that these officers are to take the constitutional oath of office, attend all criminal courts, assist in all prosecutions for crimes and offenses, appear before grand juries, and perform the same duties before juries as are by law imposed upon the district attorneys. The act does not, however, apply to this county, its design being to create such officers in counties with a population over 70,000, and not to affect counties where the appointment of assistants was then authorized by law. The powers thus conferred upon the officers named are those which are exercised by the assistants in this county, and their services, in

consequence of our large population, and the numbers of criminals who come within the borders of our city, from places too numerous to mention, are not only valuable but indispensable. They are connected with and make a part of the department of an officer of the State, connected with its judicial system, and performing many of his duties, with the same effect as if he discharged them personally. They are his assistants, and not officers of the city or county.

It is true that the salary given them is paid by the county, but this does not convert them into county officers, any more than the payment of the salary of the district attorney makes him such an officer. They are, it may be said, no less district attorneys because called assistants. They help to discharge the duties of the office, to administer the criminal laws. (See *People ex rel. Buckley* v. *Benton*, 29 N. Y., 534.) When provision is made for the government of the county of New York, the salary of these officers being a part of it, in virtue of their office, and the relation it bears to the department to which they belong, is *ex necessitate* included. They were not, therefore, within the provisions of chapter 583 of the Laws of 1871, authorizing (§ 3) the board of apportionment to regulate all salaries of officers and employes of the city and county governments. The classes subject to this provision are thus correctly described by Judge MONELL : " The officers whose salaries were brought within the regulating power of the board of apportionment, were intended to be such as formed a part of the political government of the city and county, and who were connected with the executive or legislative departments, and not such as were a part of the judicial system of the State ; otherwise, the legislature would not have limited it to officers of the government, but would have extended it to all officers whose salaries were paid out of the city or county treasury. (*Landon* v. *The Mayor*, 49 How. Pr., 218 ; see, also, *Whitmore* v. *The Mayor*, 12 S. C. N. Y. [5 Hun], 195.) There is no force in the suggestion that, unless the plaintiff was connected with the county government, his salary was never legally fixed at the rate of $10,000. He was connected with the county government. This cannot be disputed, but it was in relation to the judicial system of the State that he was thus connected, in the same manner as his superior officer, the district attorney, is.

The salary of the latter has always been paid by the city or county. (See 1 R. S., 383, § 95 ; act of 1851, *supra*.) This case is not analogous, therefore, to the case of *Dolan* v. *The Mayor* (13 S. C. N. Y. [6 Hun], 506). The employment of the plaintiff in that case was by authority of the county. In this case the employment was by authority of the legislature. The judgment is right, and should be affirmed.

Ordered accordingly, with costs.

DAVIS, P. J. :

Both of my brethren have given this case very full and elaborate consideration. It is only necessary that I should assign, briefly, my reasons for concurring in the result reached by my brother BRADY.

First. It is very clear that, by " statute, the district attorney of the city and county of New York is not an officer of the county government, but a State officer " and the fact that his compensation is payable out of the treasury of the county makes no difference with his legal status in that respect. The respondent was an assistant district attorney. The functions and duties of his office were the same as those of the district attorney. He was not appointed nor was he removable by any officer or board of the county government, but, in the absence of any statute directing the mode of his appointment or removal, the district attorney was clothed, by a general provision, with full power over that subject. (1 R. S., 116.) The existence of his office has been recognized in several statutes. (Laws of 1868, chap. 854; Laws of 1870, chap. 382.) His salary was fixed by the legislature by the introduction into chapter 382 of the Laws of 1870 (in the *legerdemain* form of legislation then much in use), of a provision declaring that " the assistant district-attorneys of said county shall receive the same annual salary as that now paid to the city judge," which happened then to be the sum of $10,000 per annum. The board of apportionment, by the third section of the act entitled " An act to make provision for the local government of the city and county of New York," passed April 19, 1871 (chap. 583 of the Laws of 1871), were empowered to regulate all salaries of officers and employes of the city and county of New York, and that board, by resolution

passed May 15, 1871, resolved that such salaries be reduced at the rate of twenty per cent per annum, to take effect on the first day of June, 1871. The power given by the act only applied to the salaries of officers and employes of the city and county governments. The board had, therefore, no authority over officers of the State government, whether their duties were local to the county or their salaries paid out of the county treasury or not. Whether an office is one of the county, or of the State government is purely a question depending upon its classification by law. I think it is manifest, under the statute above referred to, that the district attorney himself is an officer of the State government. He is classified among the judicial officers of the State, and no reason exists for holding that his assistants, who possess the same functions and perform the same duties, should not be classified, by operation of the same statute, in the same manner. They do not belong to nor form any part of the county government, but take rank as officers of the State government for the purpose of enforcing the laws of the State within their territorial jurisdiction. The mode in which their salaries are to be paid, and the location in which their duties are to be performed, are mere incidents neither defining nor affecting their legal status as public officers. Hence the fact that the statute gave the board of apportionment power to regulate the salaries of officers and employes of the city and county of New York, did not affect the respondent, because he was neither an officer nor an employe of the city or county government.

Secondly. It is argued that if this be so, the salary of the respondent was not lawfully increased by the act of 1870, but remains as previously fixed by the board of supervisors, and therefore no recovery can be had. This question hinges upon the constitutional power of the legislature to enact the provision above recited as part of a local act, entitled "An act to make provision for the government of the county of New York." Although the assistant district attorneys are officers of the State government, yet a provision of law affecting the salary of such officers in a particular county is local and not general legislation, and therefore it is obnoxious to the constitutional inhibition, unless it is fairly within the subject embraced in the title of the act. A general provision affecting all the district attorneys or assistant district attorneys of the State,

would be a general law and its inclusion in a local bill would not, within the decisions of the Court of Appeals, render it unconstitutional. In *The People* v. *McCann* (16 N. Y., 58), the court held that general provisions are not rendered void by reason of their being contained in some act with other provisions of merely local application, although the title refers to the latter provisions only, and this decision was reiterated in *Williams* v. *The People* (24 N. Y., 405). But the provision in question only affects officers of a particular locality, and therefore must be deemed local in its character.

The Constitution requires that the subject only of a local act shall be expressed in the title, and not its objects or details. I think the subject, as expressed in the title of this act, does embrace the object covered by the provision under consideration. The subject of the act is the making of provision for the government of the county of New York. It is part of the objects of that government, to raise money and apply the same to the payment of the salaries of such of the officers of the State government, who reside and perform their function within the county, as the legislature have seen fit to require to be paid by the county. Hence the act making provision for the government of the county may properly embrace provisions for raising money to pay such salaries and directions declaring their amount.

I think, therefore, the law which increased the salary was not unconstitutional. And for these reasons I concur in the conclusion of my brother Brady, that the judgment should be affirmed.

Daniels, J. (dissenting):

The plaintiff recovered a verdict on which judgment has been rendered for the unpaid balance of his salary as assistant district attorney of the county of New York, at the rate of $10,000 per year. He held the office and discharged its duties from the 1st of January, 1872, and by chapter 382, of the Laws of 1870, entitled "An act to make further provision for the government of the county of New York," it was declared that the assistant district attorney of said county shall receive the same annual salary as that now paid to the city judge" (vol. 1, Laws of 1870, chap. 382), and that was conceded to be the sum of $10,000. By this provision the assistant

district attorney was designated an officer of the county, from which his salary was to be received. His duties, from the nature of the appointment and employment, must in a general sense have been very much the same as those of the district attorney whose assistant he was. That would be the effect of his position as an assistant without any specific legal designation declaring it in terms. To be an assistant, without any restraint concerning the extent of assistance to be rendered, would necessarily imply an employment, for all practical purposes, as broad as the general duties of the officer to be assisted. (*People* v. *Benton*, 29 N. Y., 534–538.) And as an officer of the county whose salary was payable by the county, the legislature had the power to declare the extent of it, in an act passed for the sole purpose of making provision for the support of the county government.

No law had declared the office any more than an office of the county. In that respect it differed from that held by the district attorney himself, who has been classified among officers of the State for the county in which the office is held. (1 R. S. [5th ed.], 379.) And the legislature could very well provide the plaintiff's office with a different designation, and make it a part of the county government, as it substantially did by the reference made to it in the law of 1870, advancing the salary. The duties of the office though general were still local. They were performed in and about the proceedings of the courts in the county of New York, its powers and functions were chiefly to be exercised in the county, and the services performed by its incumbent paid for out of the revenues of the county. And in terming it an office of the county and providing for it as such in an act relating only to the county government, the legislature must have understood it to be a part of that government. It is true the laws to be enforced by the officer were generally those of the State, but in that respect the plaintiff did not differ in principle from other county officers, who are all more or less engaged in the enforcement and execution of the laws of the State.

The principle affecting this case in this respect does not differ essentially from that of *Huber* v. *People* (49 N. Y., 132), in which it was held that so much of chapter 383 of the Laws of 1870, as provided for the reorganization of the Court of Special Sessions

was unconstitutional, because that court was a local subject, and provisions concerning it could not be united in the same act with another local subject. In the opinion in that case it was declared that "An act regulating the duties of a public officer under the general laws of the State, if limited in its operation to a part of the State, or to a single county, is local, and must be passed in the form prescribed by the Constitution, although the subject-matter of the enactment is public, and affects public interests" (id., 135); and the case of *People* v. *O'Brien* (38 N. Y., 193), in which so much of an act as provided for the term of office and the time of electing councilmen, was held to be in contravention of the provisions of the Constitution relating to the passage of local laws, because it had been inserted in a local law passed to enable the board of supervisors of the county of New York to raise money, etc., was referred to as supporting that principle. The case of *Gaskin* v. *Meek* (42 id., 186), in which an act was held void because it was proposed by it to regulate the fees of both the sheriff and referee in the city and county of New York, was also cited for the same purpose. In both cases the acts were held to be confined to local subjects, and for that reason could constitutionally include but one, which was required to be expressed in its title. The case last referred to is entitled to much weight in the determination of the present controversy, for it related in part to the fees of the sheriff of the county, who had been classified among the State officers in the same terms as the district attorney had, and by the same statutory provision. (1 R. S. [5th ed.], 379.) If the office of the sheriff could properly be held to be local as it was in that case, surely that of the plaintiff must have been so. The act of 1870 was therefore a local law, so far as it related to the salary of the plaintiff. It was to pay him for the services required from him as a local officer of the county, which it in terms declared him to be, and for that reason he was within its title, which was to make further provision for the government of the county of New York. If he was not, then it follows that so much of the act as provided for advancing his salary was not constitutionally enacted, and he had no right whatever, at any time, to demand or receive it, and cannot now recover the amount claimed by him; but as he was a county officer, whose salary was payable from the county revenues, it may

be reasonably held, that the advancement of the amount of it was incidental to the general subject expressed in the title of the act, for it was not inappropriate to the subject of making provision for the support of the county government, to provide at the same time for the manner in which its revenues should be expended. (*People* v. *Lawrence*, 41 N. Y., 123, 139; *People* v. *Common Council of Rochester*, 50 id., 525; *People* v. *Briggs*, id., 553; *Sullivan* v. *Mayor*, etc., 53 id., 652; *Harris* v. *People*, 59 id., 599.) And it must directly follow from that conclusion, that it was equally within the power of the legislature to provide again for the reduction of the plaintiff's salary by the act of 1871, under the similar title of "An act to make provision for the local government of the city and county of New York." If it could be advanced by such an act, it was capable of being reduced in the same way (*Dolan* v. *Mayor*, 12 S. C. N. Y. [5 Hun], 506); but that was not done by a direct provision declaring that intent; it was provided for, if done at all, in a general way, by empowering the mayor of the city, the comptroller, the commissioner of public works, and the president of the department of public parks, as a board of apportionment, "to regulate all salaries of officers and employes of the city and county governments." (Laws of 1871, chap. 583, § 3.) The power of the legislature to make this enactment has not been assailed, or in any manner denied, but it has been urged as inapplicable to the case of the plaintiff, on the ground that he was not an officer of the county government, and for that reason alone not within this power conferred upon the board of apportionment. If he was not a county officer, then his salary was never increased; for it was only as an officer of the county government that it could be constitutionally done in an act to make provision for that government, and if he was then an officer of the county government, he must have been the same when the act of 1871 was enacted. If his office was included within the terms county government, when the first act became a law, it certainly had not ceased to be so at the time of the passage of the other. By the first, the legislative understanding of what the office was, found expression in plain terms, which designated it as an office of the county, and as such it was provided for as part of the county government. The terms county government were used in both acts as expressive of the same subject-matter, and

they were as broad in the last act as they were in the first. It would be entirely unreasonable to hold that the same thing was not intended to be expressed by the same terms as was at first designed, whenever they were again made use of without qualification, and no restraint whatever was imposed upon their signification in either of these instances. In the title to the act of 1870, and in that of 1871, and in the power conferred upon the board of apportionment, the county government is referred to as the same identity, the same subject, and in the later use made of the phrase, it must necessarily have included all that it did in the title of the act of 1870; that must have been the understanding and intention of the legislature in using it. It would be plainly absurd to attribute any different design to the signification of the words, in designating the powers of the board, from that given to them for the purpose of maintaining the validity of the first act, under which the plaintiff's salary was increased, and as no reasonable distinction of that nature can be drawn, then it follows that the board did have the power to reduce the plaintiff's salary as it was exercised. Its proceedings are not objected to, but simply its power to act in this particular case, and the existence of the power itself seems to be reasonably free from doubt. The plaintiff was an officer of the county government, as that was referred to in the act of 1871, and the board could, for that reason, lawfully reduce his salary. The cases of *Quin* v. *Mayor* (44 How., 266); *Landon* v. *Mayor* (49 id., 218), and *Whitmore* v. *Mayor* (12 S. C. N. Y. [5 Hun], 195), have been relied upon as authorities requiring a different construction to be given to the term county government; and if they do, then the plaintiff's case must fail, because his office was not included by means of them in the act of 1870. But these cases do not appear to warrant the position they were cited to support. In the first, the points considered were, whether Quin who was a justice of one of the District Courts, was entitled to the salary of $10,000 per year, because it was actually paid to the police justices when the act was passed under which he claimed it; and if he was, whether the failure to make an appropriation for its payment was a defense to the action. That was substantially all there was of that case, which included no feature of the present controversy. The same observation will apply with equal force to the case of Landon, who was a deputy clerk of

the Court of Common Pleas. The legislation concerning his office did not show it, as it has in this case, to be properly designated as a portion of the county government; while the case of Whitmore arose under and depended upon the construction to be given to an entirely different provision contained in an act passed in 1873. (Laws of 1873, chap. 335, § 97.) Neither of these cases can properly be allowed to control the one now before the court, for the statutory provisions relating to it have been enacted in different terms, and for the purpose of securing different results.

The action of the board of apportionment by which the plaintiff's salary was reduced should be sustained, if the construction given to the act of 1870 is the proper one, holding it to have been constitutionally increased; and if it is not, then no reduction was required by the board of apportionment, because the salary was never properly advanced. There is no equity whatever in the claim made, and the law should not be strained in order to sustain it. The plaintiff understood the amount fixed by the board as his compensation, and he apparently acquiesced in its action, by continuing to discharge the duties of his office afterwards and receiving the salary as it had been reduced. The judgment should be reversed and a new trial ordered, with costs to abide the event.

Judgment affirmed, with costs.